# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE GALINDO, | CASE NO. 1:09-cv-00624-OWW-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983 |
| v. | |
| MATTHEW CATE, et al., | (Doc. 21) |
| Defendants. | TWENTY-DAY OBJECTION PERIOD |
| _____/ | |

**Findings and Recommendations Following Screening of Fourth Amended Complaint**

I.      **Screening Requirement and Standard**

Plaintiff Jesse Galindo, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 and California law on April 8, 2009.  Pending before the Court is Plaintiff's fourth amended complaint, filed on November 24, 2010.[1]

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

---

[1] Plaintiff amended once as a matter of right on July 21, 2009, Fed. R. Civ. P. 15(a)(1), and on December 2, 2009, the Court screened Plaintiff amended complaint and dismissed it, with leave to amend, 28 U.S.C. § 1915A. On January 4, 2010, Plaintiff's second amended complaint was stricken from the record for failure to comply with Federal Rule of Civil Procedure 8(a).  Plaintiff filed a third amended complaint on January 19, 2010, and he thereafter filed the fourth amended complaint with leave of court.

monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Iqbal, 129 S.Ct. at 1949; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

## II.   Plaintiff's Claims

### A.   Allegations

#### 1.   First Amended Complaint

In his first amended complaint, which was subject to the screening order filed on December 2, 2009, Plaintiff, a validated affiliate of the Mexican Mafia (EME) prison gang, alleged that pursuant to the settlement agreement in Castillo v. Alameida, et al.,[2] validated prison gang affiliates are not supposed to be in segregated housing based solely on their gang affiliation classification.

///

_____

[2] The Court takes judicial notice of case number 3:94-cv-02847-MJJ (N.D.Cal.), Castillo v. Marshall, et al.

Rather, an affiliate may only be segregated if there is "some evidence" that the affiliate engaged in an illegal act or an act of serious misconduct in furtherance of the gang within the past six years.

Plaintiff challenged not his validation, which he accepted as supported by "some evidence" of socialization with other gang affiliates, but the decision of prison officials to segregate him in the absence of "some evidence" supporting his segregation as defined in the Castillo settlement agreement. (Doc. 12, Amend. Comp., court record p. 8.) Plaintiff also alleged that he was not being provided with meaningful classification committee reviews, that his right to associate was infringed upon by prison officials' determination that his letters contained coded messages, and that he was being impermissibly denied a polygraph examination.

Based on those allegations, Plaintiff asserted claims for relief under section 1983 for violation of the First and Eighth Amendments, and the Due Process and Equal Protection Clauses of the Fourteenth Amendments; for violation of 42 U.S.C. § 1985; for violation of California constitutional law; and for violation of the California penal code and Title 15 regulations. The Court found that Plaintiff's allegations did not support any viable claims for relief, and the Court provided Plaintiff with the applicable legal standards and leave to amend.

## 2.   Fourth Amended Complaint

After having been released from prison, Plaintiff was transferred back to the custody of the California Department of Corrections and Rehabilitation on December 8, 2006. (Doc. 21, 4th Amend. Comp., court record p. 46.) Plaintiff, who had been validated as an EME gang associate in 1998, was notified that he was eligible for an active/inactive gang review. (Id., pp. 31, 46, 48.) Plaintiff reviewed the applicable Title 15 prison regulations and concluded that, in light of the regulatory definition of gang activity, he could not be deemed active by merely socializing with gang members. (Id., p. 46.)  As a result of his conclusion, Plaintiff continued to socialize with other validated gang affiliates on the same yard, and Plaintiff attempted to communicate with a friend and gang affiliate who was out of custody. (Id., 46-47.) Plaintiff asserts that although his actions could be described as rising to the level of "gang ties," they did not constitute "gang activity" as defined in Title 15 regulations. (Id., p. 47.)

///

Plaintiff unequivocally states that he is not alleging that his due process rights under federal law were violated and that he is not challenging his gang validation, and he concedes that there is some evidence to support the finding that he has gang ties.[3] (Id., 43-45.) Rather, Plaintiff seeks redress for violation of his rights under state law in that by failing to categorize him as either "currently active" or "inactive," prison officials allegedly violated his right to due process under state law. (Id., p. 47.)

More specifically, Plaintiff claims that under the Castillo settlement agreement, state officials agreed that validated gang affiliates would no longer be segregated for an indeterminate term unless a finding is made that the affiliate is "currently active." (Id., p. 44.) Prison officials are required under the agreement to determine whether inmates have been involved in illegal acts in furtherance of a gang within the past six years and inmates can only be categorized as "currently active" and subject to an indeterminate segregation term if that finding is made. (Id.) Plaintiff alleges that he was given an indeterminate term, but he was never found to be "currently active."

### B.    Federal Claims

#### 1.    Due Process

As Plaintiff was previously notified, he may not rely upon the violation of the settlement agreement in the Castillo case to state a claim under section 1983 because the agreement did not have the effect of creating or expanding Plaintiff's constitutional rights. See Cagle v. Sutherland, 334 F.3d 980, 986-87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). While Plaintiff voices no disagreement with that general principle in his fourth amended complaint and he distances himself from any federal due process claims, given the nature of the events at issue here, the Court must still determine whether on the facts alleged, Plaintiff states a claim. See Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (prisoners proceeding pro se in civil

///

---

[3] Described by Plaintiff as innocuous. (4th Amend. Comp., p. 44.)

1  rights actions are still entitled to have their pleadings liberally construed and to have any doubt
2  resolved in their favor).

3       The Due Process Clause protects Plaintiff against the deprivation of liberty without the
4  procedural protections to which he is entitled under the law.  Wilkinson v. Austin, 545 U.S. 209,
5  221, 125 S.Ct. 2384 (2005).  To state a claim, Plaintiff must first identify the interest at stake.
6  Wilkinson, 545 U.S. at 221.  Liberty interests may arise from the Due Process Clause or from state
7  law.  Id.  The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more
8  adverse conditions of confinement, id. at 221-22 (citations and quotation marks omitted), and under
9  state law, the existence of a liberty interest created by prison regulations is determined by focusing
10  on the nature of the condition of confinement at issue, id. at 222-23 (citing Sandin v. Conner, 515
11  U.S. 472, 481-84, 115 S.Ct. 2293 (1995)) (quotation marks omitted).  Liberty interests created by
12  prison regulations are generally limited to freedom from restraint which imposes atypical and
13  significant hardship on the inmate in relation to the ordinary incidents of prison life.  Wilkinson, 545
14  U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d
15  716, 718 (9th Cir. 2007).  If a protected interest is identified, the inquiry then turns to what process
16  is due.  Wilkinson, 545 U.S. at 224.

17       The assignment of validated gang members and associates to the Security Housing Unit
18  (SHU) is an administrative measure rather than a disciplinary measure, and is "essentially a matter
19  of administrative discretion."  Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz
20  v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  As a result, prisoners are entitled to the minimal
21  procedural protections of adequate notice, an opportunity to be heard, and periodic review.  Bruce,
22  351 F.3d at 1287 (citing to Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986),
23  abrogated in part on other grounds by Sandin, 515 U.S. 472).  In addition to these minimal
24  protections, there must be "some evidence" supporting the decision.  Id. (citing Superintendent v.
25  Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985)).  Although discussed in the context of a disciplinary
26  hearing, the Ninth Circuit has stated that under the Hill standard, the evidence should have some
27  indicia of reliability.  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).
28  ///

Based on Plaintiff's general allegations regarding SHU conditions, the Court will assume the existence of a liberty interest in being free from an indeterminate SHU term. See Wilkinson, 545 U.S. at 223-24 (finding a liberty interest in avoiding indefinite confinement in Ohio's "Supermax" facility). However, there are no facts alleged which would support a claim that Plaintiff was assessed an indeterminate SHU term without the minimal protections he is due under federal law. Bruce, 351 F.3d at 1287. By Plaintiff's own admission, he has gang ties and socializes with gang members. Plaintiff takes issue with prison officials' alleged violation of Title 15 regulations as they relate to "gang activity," but the violation of state prison regulations does not support a federal claim unless that violation also runs afoul of the minimal federal procedural protections due Plaintiff. See Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994) (declining to consider whether prison officials violated their own regulations because the inmate was provided with process sufficient to satisfy federal standards), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). Accordingly, the Court finds that Plaintiff has not stated a viable federal due process claim.

## 2.   **First Amendment**

In addition to due process violations, Plaintiff alleges a First Amendment claim relating to the confiscation of the two letters he attempted to send a gang associate who was out on parole. In the previous screening order, the Court addressed Plaintiff's First Amendment claim as follows:

> Plaintiff was originally validated as an associate of the EME in 1998, and again validated in 2007 during his active/inactive review, based on two outgoing letters written by Plaintiff. (Amend. Comp., court record pp. 35-41.) Prison officials concluded the letters contained coded language demonstrating that Plaintiff was writing to a known EME associate in furtherance of the EME. (Id., pp. 37, 41.) Plaintiff alleges that confidential informants are given polygraph examinations to verify the information they supply, and that he should be allowed to take a polygraph examination in support of his position that his letters do not constitute engagement in an illegal act or an act of serious misconduct in furtherance of the gang, required under the Castillo settlement to support the segregation of a gang affiliate. Plaintiff alleges a First Amendment violation arising from prison officials' refusal to afford him a polygraph examination, and from prison officials' conclusions regarding the letters used to validate him.

> Plaintiff does not have right to a polygraph examination under the First Amendment, and his claim arising from that allegation fails as a matter of law.

> With respect to the conclusions drawn from the letters, Plaintiff, citing to Reed v. Faulkner, 842 F.2d 960, 963 (7th Cir. 1988), alleges that "the issue is not whether Plaintiff's letters contain coded gang activity. The issue is the route prison officials took in arriving at this conclusion. (Piling conjecture upon conjecture.)" (Amend.

Comp., court record p. 22, emphasis in original.)  The language in the decision in Reed seized upon by Plaintiff concerns the lack of evidence from prison officials supporting the district court's finding that no violation occurred in a First Amendment case, causing the appellate court to state there was only "conjecture upon conjecture," not evidence, in support of the finding.  Reed, 842 F.2d at 963.

To state a First Amendment claim, Plaintiff must allege some facts demonstrating that his rights protected under that amendment were impermissibly infringed upon by prison officials.  Here, Plaintiff is not alleging mail censorship, e.g., Barrett v. Belleque, 544 F.3d 1060, 1062 (9th Cir. 2008), or interference with a protected right of association, e.g., Overton v. Bazzetta, 539 U.S. 126, 131-32, 123 S.Ct. 2162 (2003).  Rather, Plaintiff attempts to postulate the existence of a First Amendment violation based on his position that prison officials are required by the Castillo settlement to identify evidence that he engaged in an illegal act or an act of serious misconduct in furtherance of the gang in order to segregate him, and in determining that his letters contained coded messages that were in furtherance of the gang, officials instead relied upon conjecture.

Whether or not prison officials had evidence versus conjecture to support of their conclusions regarding Plaintiff's letters does not become relevant until and unless Plaintiff identifies an underlying constitutional violation resulting from the use of that evidence.  Because Plaintiff has not alleged any facts demonstrating that prison officials infringed upon any of his rights protected under the First Amendment, Plaintiff fails to state a claim.

(Doc. 14, Screening Order, 3:4-4:10.)

In his fourth amended complaint, relying upon language in the first screening order and citations provided therein, Plaintiff makes the bare assertion that he is alleging mail censorship and interference with his right of association.  (4th Amend. Comp., p. 52.)  However, Plaintiff offers no specific facts to support his claim.

Plaintiff does not dispute that he is a validated associate of the EME and that he was attempting to communicate by letter with another validated EME associate who was out on parole.  (Id., p. 54, 58.)  Prison officials concluded that the two intercepted letters contained coded language to further EME activities inside and outside of prison, and they used the two letters as source documents to support Plaintiff's current association with the EME.[4]  (Id.)  Given that context and in the absence of any facts would support a plausible claim that Plaintiff's First Amendment rights were impermissibly infringed upon by the events described, the Court finds that Plaintiff's First

---

[4] The Court expresses no opinion as to the merits of that conclusion.  Barrett, 544 F.3d at 1062.  Rather, the Court notes only that based on Plaintiff's exhibits, that was the conclusion reached and there are no other facts alleged which suggest anything more than the *mere possibility* of misconduct.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

1    Amendment claim fails.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

2           **C.     State Law Claims**

3           Plaintiff attempts to save his case from dismissal by relying on prison officials' alleged

4    violation of Title 15 regulations and state law to state a claim.  However, section 1983 does not

5    provide a cause of action for violation of state law, and although the Court may exercise

6    supplemental jurisdiction over state law claims, Plaintiff must first state a viable claim under federal

7    law.  28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th

8    Cir. 2001).  For the reasons set forth above, the Court finds that Plaintiff has not alleged any viable

9    federal claims.  As a result, while the Court is unaware of any authority for the proposition that there

10   exists a private right of action available to Plaintiff for violation of Title 15 regulations, e.g., Parra

11   v. Hernandez, No. 08cv0191-H (CAB), 2009 WL 3818376, at *8 (S.D.Cal. Nov. 13, 2009); Davis

12   v. Kissinger, No. CIV S-04-0878 GEB DAD P, 2009 WL 256574, at *12 n.4 (E.D.Cal. Feb. 3,

13   2009), adopted in full, 2009 WL 647350 (Mar. 10, 2009), the Court does not have jurisdiction over

14   any state law claims in any event, 28 U.S.C. § 1367(a); Herman Family Revocable Trust, 254 F.3d

15   at 805.

16   **III.   Conclusion and Recommendation**

17          Plaintiff fails to state any claims upon which relief may be granted under section 1983.

18   Plaintiff was previously notified of the deficiencies in his claims, provided with the applicable legal

19   standards, and given the opportunity to amend, but he was unable to state any cognizable claims and

20   based on the record, further leave to amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130

21   (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

22          Accordingly, the Court HEREBY RECOMMENDS that this action be dismissed, with

23   prejudice, for failure to state a claim under section 1983.[5]

24          These Findings and Recommendations will be submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty (20)**

26

27          [5] The Court expresses no opinion as to the possibility that there may be some form of relief available to
28   Plaintiff under state law because in the absence of any viable claims under section 1983, the Court has no jurisdiction over those claims.

**days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:     April 29, 2011**                          **/s/ Sheila K. Oberto**
                                                      UNITED STATES MAGISTRATE JUDGE